These numbers 24 5 6 2 2 and 24 5 6 2 7 USA vs. Kelly Harris and USA vs. Neal Harris. Argument not to exceed 10 minutes for each defendant, 20 minutes for Plaintiff. Ms. Winters, you may proceed. Good morning. My name is Jessica Winters. I represent the appellant Kelly Harris. She and her co-defendant Neal Harris, her husband, were convicted on several counts of wire fraud in relation to emergency relief loans that they applied for and obtained during the COVID-19 pandemic. And these cases have been consolidated for the purpose of the appellee briefing and then oral argument today so I'll be sharing my time with counsel for Neal Harris and so I'll have seven minutes and I'm reserving three for rebuttal. Very well. So thank you so much for hearing this matter today. I'm just going to focus on the sentencing enhancements which I think are Ms. Harris's strongest arguments on appeal and that relates to the two-level enhancement that she received for obstruction of justice in relation to perjury and there was a kind of an emerging issue on that point that I discovered yesterday while I was preparing for oral argument which related to the standard of review. There was previously some question about whether it would be a clear error review or a de novo review for the application of this particular sentencing enhancement and the court just clarified its position and USB Jackson earlier this month and I submitted a 28-J letter on that issue yesterday. Hopefully you all received it. Okay thank you. So now it's clear that this clear error standard of review applies with regard to the application of this enhancement because the court determined that it's a fact-bound determination that the district court is in the best position to consider and as a result it should be reviewed for clear error. It's our position though that even with a district court improperly applied this two-level enhancement. What the court looks at for determining whether... Can I ask you, because the district court here found, looked at the trial testimony regarding the number of employees expenses and income of certain businesses and I mean if it believed that the jury found that some of these businesses were a sham and so why isn't that perjury if she's lying? I know you know there's always a little discomfort because this goes against the defendant's right to testify and so that's always underlying all this but the district court made specific factual findings. I mean why isn't that right? Right and so the test that the Sixth Circuit is now using is they have to look carefully to see if the district court made specific findings not only about falsity but also about willfulness and materiality and what this has said if those findings are absent then the court identifies clear error and reverses. So we may have this finding of falsity okay so he looked at her testimony he said the jury didn't believe you about your number of employees and we can argue about that all day based on her specific language but I don't think that the court then went on and made a determination about willfulness in terms of was she willfully misrepresenting the facts to the jury here she was saying that in her mind when she said she had this number of employees she was discussing children. She ran various nonprofits and she paid children a few dollars here and there to perform tasks and these were all at-risk youth and so what about the revenue the revenue okay the one specific yes your honor the one specific finding on revenue related to Ruby Bailey and she was asked you know did you tell the the government when you submitted this loan application I think it was that they had 378,000 or something like that and revenue the year before she said yes that's what I put on my application and then they said is that what the actual revenue was and she said well that was the revenue that we put on our tax return and so then it got into questioning about whether she had actually submitted the tax return or not but the fact was that the tax return did match the number that she had put on the application. The tax return was submitted later right yes your honor and just on the 378 again the jury found against your client on that found her guilty of wire fraud as it relates to I believe it's count five but how is that not material have how's it not you know essentially perjurious. So in this case the facts and the law what's required to convict kind of overlap okay so with the wire fraud counts that she was charged with they had to find a specific intent to deceive okay and that's what the jury found they were also given a good faith instruction so the court believed that there was enough evidence in the record that they acted in good faith and submitting these applications sufficient to warrant giving this good faith instruction. The jury rejected that and found this intent to deceive but just because there was an intent to deceive and a fraud was committed doesn't necessarily mean that a perjury was committed it just means that the jury made a credibility determination and didn't believe what my client was saying but you have to look at the actual evidence of record to see whether what she said was proven to be false on the record and that the court did the court said I find that she gave this testimony on these three specific things and that it was false but then he I don't think that the district court went on and analyzed the other two factors that are required under the Sixth Circuit analysis for application of this enhancement to be material right it's a whole count of the indictment so so it's necessarily material right well what the district court said was that it the district court did make a finding on the materiality however it was it was sort of an overall finding of materiality and what the judge said was any testimony that she gave that would tend to support the legitimacy of these various businesses that she made these loan applications for was material because I don't understand she says I have three hundred seventy eight thousand dollars in revenue for Ruby Bailey the count charges that they find no right she didn't so how can it not be intentional willful material all the things you're talking about well the jury found that it was intentional that she put that number on the loan application and it was false and it was false right and when she testified she why isn't that it well when she testified she didn't say our revenues were 378 she said I put that number on the application and she said when I put that number on my tax return well wait a minute but it's your testimony that Ruby Bailey had three hundred seventy eight thousand in revenue yes and then she and we did and we did file a tax return showing that so yes we had that in revenue and we filed a tax return and the jury said you lied and you didn't have it right but then does that mean if she's asked a question about the account itself and she's testifying in her own defense that she's automatically going to be also subject to the perjury enhancement these knowingly lies about it yes well she's saying that she I mean in her her her testimony was that that was the actual revenue that was put on the tax return and it matched what she had put on the loan application and the jury rejected that and the jury rejected it and the district court found it was false and intentional right and but it's what the case law says is that this test that is separate analysis by the district court is set out so that not every defendant who testifies on their own behalf will be automatically subjected to the perjury enhancement just because the jury doesn't believe their testimony and so what were the facts that were presented by the government that proved that number to be false and is is the district courts conclusion on that supported by preponderance of the evidence and it's our position that there weren't there was no concrete evidence that was introduced by the government that would support the district court's finding on perjury enhancement by clear preponderance of the evidence and that he did not go through the required analysis and so a clear error exists and then there's one thing you're saying the two-point enhancement shouldn't apply you're also saying the district court didn't go through the analysis did you raise that sort of in response to the Boston question judge you didn't go through the analysis you only talked about you know elements two and three you didn't talk about element one did you raise that as a separate objection there was a Bostick objection raised at trial and they argued that the the the perjury enhancement should not apply they briefed it and it was overruled and so interestingly to me when I was reviewing the record there was a Bostick like when he said I mean I can log you have any objections judge Mathis is asking when he asked do you have any objections did defense counsel say yes you made findings on one and two but not three it was not that specific that's that's correct what was interesting to me is when I looked at this statement of reasons that the judge the judge actually wrote an extensive statement of reasons justifying the position of the sentence and he didn't talk about the enhancements at all in in that statement of reasons so there wasn't that you know sort of very detailed laying out of the steps of his analysis on the application so we just really have to look at the sentencing transcript and there then that kind of leads me also to the next argument which is the application of the sophisticated means enhancement all right miss Winters you're out of time you've got three minutes rebuttal you could use it now or you could hold it I will hold it thank you your honors all right let's hear from the mr. Neil's Neil Harris's counsel my name is Tara Bay and I represent Neil Harris and I've reserved three minutes for rebuttal very well the I want to just divide my argument into two specific portions the first one has to do with count six seven and eight which charged both Neil Harris and Kelly Harris with the wire fraud related to Ruby Bailey Center and turtle doves the the evidence of trial was that mr. Harris had nothing to do with that application being filed he did not file it he did not ask Kelly Harris to file it he did not provide any information that was put into that application there's no evidence he even knew whatever information was put into that and because of that we feel that the evidence was insufficient for that was insufficient that he made a material statement with the intent to defraud the government and I think it's important to note that the those applications like that was in both Kelly and Neil Harris's names those applications my understanding is that miss Harris is the one who who filled out those applications and she's the one who put the information into those applications and caused them to be filed I'm just saying the name I know some may just have Kelly Harris I may just have Neil but the counselor talking ahead both names well they Kelly Harris put Neil Harris on to the bank account after the money came in on those two businesses and turtle doves and and the Ruby Bailey Center but there's no that he participated in and making any material statements with the intent that the government would rely on those statements to fund the money and it's I think it's important to note that this indictment does not charge and aiding and abetting and it does not charge conspiracy it charges just the flat wire fraud and and so the Robinson case says specifically but he did he did denied this in front of the jury the jury rejected it and he was withdrawing money from all the accounts right didn't he show that he withdrew money from those two accounts at the direction of his wife I mean he went to the bank for his wife that was an argument but that was made right jury the jury rejected it they saw him on the Apple on the application they saw his name they saw him withdrawing the money right and they concluded from that and other things that he that that was enough I agree with you it's not a mountain of evidence but it doesn't need to be under the Jackson's right but in in Robinson this court specifically said that the scheme is in the submission it's not in how the money is handled I get it but you can surely a jury can consider that circumstantial evidence as to guilt like if if the two of them if she does everything but then he starts taking all the money out and buying a Porsche or and whatever surely the jury can consider that well I think the jury can consider that but the question is is whether it's sufficient I mean this is not a speculation I get it you know it has evidence in the light most favorable to the government yes Jackson standards really difficult it is I agree wholeheartedly that this is a difficult standard here and we do have to view the light and most favorable to the government and any reasonable inferences and any credibility determinations all in favor of the government but at the end of the day we need to have more evidence than just speculation that these why is that speculation if you have a business I can't go take money out of you know McDonald's no but if your wife sent you to the bank and said can you withdraw this money but if my name is on both the application and the account allowing me to do those things it's a reasonable inference that I was involved I I would I cannot concede that issue I would disagree that I would hope you wouldn't that that's more than it and regarding the the remaining counts with as far as the church and the American where or work horses specifically the church on this case the investigation began because bank teller reported to his bank investigator that Mr. Harris came in and got some cashier's checks out of the church account that he didn't think worse were related to the business but if you he testified for the government this this is Tyler Jenkins and he testified that Mr. Harris went into the bank he had cash with him he wanted to get cashier's checks for these certain things the homeowners association fees his bankruptcy attorney and the teller told him no you cannot just bring cash in and get a cashier's check the cashier's check has to come out of an account and Jenkins told he testified that he told Mr. Harris you have to deposit the cash into the account and then we have to write the cashier's check from that account so Mr. Harris didn't want to do that because these were his personal expenses and not expenses related to the church but the teller basically forced him to to do it this way to deposit the cash money and get the get the cashier's checks from the church account and that's why he asked to have at least his name on the memo of those cashier's checks so it seems fundamentally unfair that the this evidence was used against Mr. Harris as some some evidence that he was scheming to defraud the government when it was the bank teller who who forced him into the situation and no one from the bank or the SBA asked Mr. Harris or Mrs. Harris whether what these expenses were for he said that his his church had always been a cash business and certainly during the pandemic he was helping his parishioners to buy groceries or pay their rent or mortgage and he was giving them cash to do that that's why he needed the loan because there wasn't the money coming in to pay to help pay these parishioners pay their bills and other needy people in the community and there wasn't any evidence aside from the cash withdrawals and those those three checks that that what Mr. Harris did was not in the course of the church business I thought he misrepresented on his application the the proceeds of the church the employees of the church they may that all those things including I think he made an allegation it was agricultural the church was not was not an agricultural it was a faith-based faith-based as an agricultural not not on the church applications but all right did did he that he represent correctly the the the proceeds of the church the employees all these other factors he testified that he that he did and there was no evidence aside I mean there is a speculation that you know it's hard to believe that he raised you know almost $200,000 in 2019 through selling sandwiches and other you know donations to the church but there was no there was no evidence that that was not accurate how many how many employees did the church yeah three and three people testified at trial that what they the work that they had done for the church I'm out of time but they were there's the three testified that one outfitted the the room that they were in the apartment they were in for for church services one set up the video equipment so that he could stream his services throughout the pandemic like many churches did and another one testified that he was responsible for the maintenance and for cleaning and they all got paid in cash so they he represented there were three employees and three employees testified all right any further questions at this time you'll have your three minutes rebuttal miss me good morning your honors may it please the court Kate Smith on behalf of the United States to jump into the Neil Harris questions the court was just posturing factually there was an initial application for Grace Christian Church that said it was a faith-based organization that was rejected by the SBA the second application did list it as an agricultural entity that's kind of what my recollection was Neil Harris did eventually correct that with the SBA it had church in the name but everything on the application was false the church was not real it did not have two hundred thousand dollars in revenue it did not exist as a business entity in any capacity it did not have any employees with the Secretary of State or the Unemployment Office it wasn't even registered as an entity with the state everything on that application was false is the basis of those specific counts there was another factual argument just made that sounded like an evidentiary objection to evidence that came in at trial about the bank tellers testimony I just want to be clear that was not sure why that's even relevant it was not objected to it was not litigated in the lower court I don't think it is relevant to this particular appeal the arguments about counts six seven and eight as to Neil Harris on the turtle doves counts again this was not raised in the briefs or raised in any specificity on the rule 29 arguments I want to clarify for the court why Neil Harris was named in those counts I think judge the par was was alluding to this he was on the bank accounts where the fraudulent proceeds from those applications went the substantive wires at issue in those counts were the financial transactions not the applications to the SBA he doesn't have to have been the one making the false representations to be guilty of wirefraud under those particular accounts he had to have participated in the scheme and he did that when he was the one withdrawing the money withdrawing the cash proceeds and on the substantive there was a second wire transfer to another turtle doves account that he was also on that is more than sufficient under this standard of review for the jury to have found him guilty and the district court correctly evaluated all of that evidence when it found that that the jury's verdict was well sustained by the evidence unless the court has any other questions on sufficiency of the evidence I'd like to turn to this obstruction of justice argument made by Kelly Harris's counsel there was no error here I actually cannot imagine a more thorough record by the district court in evaluating all the prongs required to find perjury how can a defendant testify they didn't do it without being subject if convicted to perjury I mean the guidelines are pretty clear the application note to that we've got to protect a defendant's right to testify and deny guilt right that's essentially what she's doing I mean what troubles me is every time a defendant testifies they're subject to this enhancement in some form and a good district judge like Judge Weir can easily make a good record I recognize the tension there but what happened here was not a general denial of what happened Kelly Harris testified falsely 16 times those I those are identified in the sentencing memo docket entry 120 at 730 to 731 she testified that turtle doves began operating in 2018 not true the business did not exist she testified that it operated at the specific address listed on the application not true she testified that she paid rent at that location also established to be not true and that she filed taxes for this business entity which was not true she never filed anything for turtle doves that's just one entity there are several other examples so she's not just generally denying he's on the exhibit that judge referenced in his transcript I can't remember there was a substantive exhibit to the sentencing hearing that lists those 16 instances they're also outlined in the sentencing memo okay what was the is the exhibit attached to the transcript the exhibit is in the court record okay I'll find I don't have the sentencing memo but I've got the have the defendants raised a constitutional issue that this would only apply to to Kelly who's raised the obstruction of justice did did she argue a constitutional issue that the obstruction of justice enhancement violates her constitutional rights to testify no she did that okay I mean you say there's tension but the issue does we don't have to resolve that issue do you do not have to resolve it particularly here where there are so many facts that she testified to see I think that's probably the key that if you testify falsely as to facts that that's one thing testifying as to your intent that I did not intend to kill this person all right I did not intend to do this that be pretty hard to find that obstruction of justice but to testify as specific facts that you know there were five employees when there were zero I mean that I think that's that's clearly perjury but the whole thing is interesting but we don't have to resolve it right thank you I raised it all right thank you good issue though defense counsel didn't get time to get to sophisticated means you know I fear that it's going to come up in rebuttal and I won't get a chance to respond to it if the court has any questions about it this is a very fact-based inquiry for the court you know that the standard of review is a little bit unclear I think the logic applying to the standard of review of obstruction is true here and that this court can find that clear error is the appropriate standard here but the the nuances and the layering of what happened here the district court went through all that you know in applying the sophisticated means enhancement de novo applies I mean does that change the analysis absolutely not no this court has all of the evidence in front of it about just how layered this scheme was particularly on the false tax returns you know if you look at a case like Pierce this court affirmed the application of that enhancement really just based on a false w-2 which in and of itself is not a hard thing to create but that was what was the what the court relied on and applying the enhancement here you have a false tax return for Ruby Bailey actually filed with the IRS after the detection of the offense now there is no evidence that Ruby Bailey was doing anything in 2019 it did not have a bank account it did not have any employees it didn't have a presence it wasn't registered it was dissolved with the state and to go and create an entirely fake tax return and file that with the IRS in an effort to get the money back from the SBA certainly warrants this sort of intricate complex language in the enhancement just finally I want to respond to something that was in the reply which which wasn't really addressed in the initial briefing and this concept that the SBA the Small these loans no matter what was on the application and that's just abjectly false on the record the SBA witness testified two separate times as to materiality that's cited in the statement of facts and then you have the fact that some of the applications were denied what was on those applications mattered just the amount of revenue listed on the application dictated the amount of the loan the number of employees on the application dictated the amount of an advance a business would get everything on that application mattered so this sort of late attempt to argue materiality in an appeal I just want to be clear that that should be rejected very well any further questions thank you all right rebuttal this winners I don't want to dwell much longer on the perjury enhancement except to say that while the government did advance 16 specific items that they alleged miss Harris testified perjured herself in her testimony on the district court only relied on three and so what the Sixth Circuit case law says is that the district court has to make specific findings with regard to each piece of testimony that the court is finding was perjury and that if those findings are absent clear error exists and reversal is compelled on the sentencing enhancement for sophisticated means the question of the standard to be applied is actually a very interesting one this court has for lack of a better phrase kick the can down the road on that in some recent cases and given the case the court's decision in the USP Jackson matter this month it is an interesting question about whether it's going to be clear error or whether it will be de novo I submit that it should actually be de novo because it is not a fact-bound determination and the same way that the perjury enhancement is so you have for sophisticated means the historical facts that are established at trial so exactly how was this crime carried out what means of artifice were employed but then the question of whether or not that is a sophisticated means is a legal determination and that is the application of the guideline to the facts which this court has repeatedly held is subject to de novo review and on that issue what the courts have said is that it has to be an especially complex or intricate offense conduct and it relates mostly to concealment and so let's look at what miss Harris did to conceal she filed these applications she got the loans she started the bank accounts the loan money went to the bank accounts when the bank flagged it as fraudulent SBA said send the money back the money got sent back she immediately said contacted the SBA contacted the bank contacted law enforcement and said these loans were legitimate what can I do to prove that to you what do I need to give you they said okay well give us tax returns she's like okay well I'm going to file my tax returns she filed the tax returns they said we need you to make sure these businesses are registered with the Secretary of State she went and did that for every single thing that she did she was very clear in her using her own name her own addresses these were businesses that the testimony throughout trial established had been operating for years even if they weren't being operated in a proper manner the testimony really revealed that the mr. and mrs. Harris were not sophisticated business folk people and they were not running their businesses properly before they apply for these loans when the money got sent back they did everything they could to try to bring their businesses in line to prove that they were legitimate and those were the very steps that they did in response to the SBA telling them they needed to do these things that the court relied upon and applying the sophisticated means enhancement so it's our position that even certainly under de novo standard but even under a clear air standard that the sophisticated means enhancement should not apply very well thank you his favorite rebuttal I just like to say two things first of all as miss Smith indicated mr. Harris was not on the applications for the turtle doves or the Ruby Bailey Center so I do believe that Robinson applies and that any action that mr. Harris took was in regards to how the money was spent and not in how how it was it was that the scheme to was the in the submission and then the second thing is is that mr. Harris did not file with the Secretary of State but he did file with the IRS back in 2017 he for the grace church and he received an EIN number and it it seems incredible that mr. Harris would file a document with the IRS to receive an EIN number for a holy fictitious business do nothing with that until three years later and you know all of a sudden now he has this opportunity to to use the CIA that seems incredible I think it's far more reasonable that this church was in existence he's not a sophisticated man he started these churches in his house he started this business as a that's more of a regulatory issue and not a criminal issue and we would ask that counts six six seven and eight be vacated and that he be remanded for resentencing and it is significant he would still have the other he might still have that accounts of conviction but the because this was not an aiding and abetting and this was not a conspiracy the amount of his loss would be reduced by 60% or this is a significant amount if he's not held accountable for the applications for the turtle doves or the Ruby Bailey Center then his loss amount drops dramatically and his sentencing range within also and and I don't think we can say that that it would be harmless because the judge did send him to the bottom of the guidelines the judge might have sentencing to the bottom of the guidelines if those that loss amount was not included in his in his base offense level very well thank you Bay and miss winners I noticed that you're appointed pursuant to the Criminal Justice Act I want to thank you for your representation behalf of your clients and for the benefit of the court thank you thank you for your representation